No. 21-1900

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

GERALD E. GROFF,

*Plaintiff-Appellant,*

v.

LOUIS DEJOY, Postmaster General, United States Postal Service,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 5:19-cv-01879-JLS
Honorable Jeffrey L. Schmehl

---

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

---

Aaron M. Streett
Christopher E. Tutunjian
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
Tel: (713) 229-1234

Randall Luke Wenger
Jeremy L. Samek
INDEPENDENCE LAW CENTER
23 North Front Street
Harrisburg, PA 17101
Tel: (717) 657-4990

Alan J. Reinach
CHURCH STATE COUNCIL
2686 Townsgate Road
Westlake Village, CA 91361
Tel: (805) 413-7398

Kelly J. Shackelford
Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Stephanie N. Taub
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, TX 75075
Tel: (972) 941-4444

David W. Crossett
CORNERSTONE LAW FIRM, LLC
8500 Allentown Pike, Suite 3
Blandon, PA 19510
Tel: (610) 926-7875

*Attorneys for Plaintiff-Appellant*
*Gerald E. Groff*

# TABLE OF CONTENTS

Table of Authorities ................................................................. ii

Summary of Argument .............................................................1

Argument....................................................................................3

    I.     USPS failed to offer Groff a reasonable accommodation.....................3

         A.     Title VII's plain text requires that an accommodation eliminate the conflict between employment obligations and religious practice. ................................................................3

         B.     USPS's shift-swapping arrangement is not a reasonable accommodation because it did not eliminate the conflict between Sunday deliveries and Groff's religious beliefs. ........11

    II.    USPS cannot demonstrate that accommodating Groff would cause undue hardship to its business. .................................................18

         A.     USPS cannot rely on the MOU to establish undue hardship. ...................................................................................18

         B.     USPS fails to offer proof of any other hardships.....................22

Conclusion ................................................................................28

Combined Certifications ...........................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ansonia Bd. of Educ. v. Philbrook*,
479 U.S. 60 (1986)..................................................................................3, 5, 7

*Beadle v. Hillsborough County Sheriff's Dept.*,
29 F.3d 589 (11th Cir. 1994) ......................................................12, 13

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020) ........................................................................4

*Cooper v. Oak Rubber Co.*,
15 F.3d 1375 (6th Cir. 1994) ..............................................................14

*Crider v. Univ. of Tenn., Knoxville*,
492 F. App'x 609 (6th Cir. 2012) ..................................................16, 23

*Draper v. U.S. Pipe & Foundry Co.*,
527 F.2d 515 (6th Cir. 1975) ..............................................................26

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015).....................................................................7, 9, 10, 23

*EEOC v. Arlington Transit Mix, Inc.*,
957 F.2d 219 (6th Cir. 1991) ..............................................15, 16, 17

*EEOC v. GEO Grp., Inc.*,
616 F.3d 265 (3d Cir. 2010) ..........................................................7, 26

*Getz v. Pennsylvania Dept. of Pub. Welfare*,
802 F.2d 72 (3d Cir. 1986) ..................................................................20

*Harrell v. Donahue*,
638 F.3d 975 (8th Cir. 2011) ..............................................................23

*Mann v. Frank*,
7 F.3d 1365 (8th Cir. 1993) ................................................................20

*Miller v. Drennon*,
1992 WL 137578 (4th Cir. June 19, 1992).......................................12

*Miller v. Port Auth. of N.Y. & N.J.*,
    351 F. Supp. 3d 762 (D.N.J. 2018), *aff'd*, 788 F. App'x
    886 (3d Cir. 2019) ................................................................ 14

*Patterson v. Walgreen Co.*,
    727 F. App'x 581 (11th Cir. 2018) .................................... 13

*Protos v. Volkswagen of Am., Inc.*,
    797 F.2d 129 (3d Cir. 1986) ........................................ 24, 26

*Trans World Airlines, Inc. v. Hardison*,
    432 U.S. 63 (1977) ............................ 2, 12, 18, 19, 21, 24

*US Airways, Inc. v. Barnett*,
    535 U.S. 391 (2002) ........................................... 4, 5, 8, 19

*Virts v. Consol. Freightways Corp. of Del.*,
    285 F.3d 508 (6th Cir. 2002) ........................................... 20

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    139 S. Ct. 361 (2018) ......................................................... 6

**STATUTES**

42 U.S.C. § 2000e-2(h) ......................................................... 19

42 U.S.C. § 12111(8) ............................................................ 10

**REGULATORY AUTHORITIES**

29 C.F.R. § 1605.2(e)(1) ....................................................... 25

29 C.F.R. § 1605.2(e)(2) ....................................................... 19

29 C.F.R. § 1630.2(o)(1)(ii) .................................................... 5

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ................................. 6

Oxford English Dictionary Online (2021) ............................... 6

Webster's Seventh New Collegiate Dictionary (1971) ........... 15

## SUMMARY OF ARGUMENT

USPS asks this Court to follow the district court in misreading Title VII, misapplying Supreme Court precedent, and overlooking the fact that USPS successfully accommodated Groff and then ceased doing so.

USPS's malleable standard for "accommodations" cannot be squared with principles of statutory interpretation and Supreme Court precedent, which reflect that an accommodation must eliminate the conflict between work obligations and religious practice. USPS envisions an alternative Title VII where the employer nearly always wins, rendering the statute's promise of a workplace free from religious discrimination nothing more than a mirage for the employee.

Applying the proper standard, USPS failed to offer an accommodation. USPS argues that its shift-swapping arrangement constitutes an accommodation *regardless* whether it was effective at eliminating the conflict between Sunday deliveries and Groff's Sabbath observance. USPS cites not a single case to support its view that an offer of shift swapping is per se a reasonable accommodation, even if it requires the employee to violate his conscience over 20 times in two years. On the contrary, caselaw establishes that a shift-swapping arrangement, like all accommodations, must be effective to constitute a reasonable accommodation under Title VII. Because it failed to eliminate the conflict between Sunday deliveries and Groff's

1

religious beliefs, the shift-swapping arrangement did not constitute a reasonable accommodation.

On its undue-hardship defense, USPS embraces the district court's erroneous holding that accommodating Groff would necessarily be an undue hardship under *Hardison* because it would supposedly violate the MOU.  But *Hardison* is limited to accommodations that would require violating *seniority provisions* of a CBA.  USPS ignores the fact that only seniority provisions are exempted from Title VII, and it elides the extensive caselaw that limits *Hardison* to such provisions.  Because the MOU contains no seniority provisions relevant to RCAs, it cannot support USPS's undue-hardship defense.  In any event, the MOU did not preclude USPS from accommodating Groff.  USPS's position would eviscerate Title VII by allowing an employer and union to bargain away an employee's right to religious accommodation—on matters far outside the narrow *Hardison* exception.

The other hardships posited by USPS lack evidentiary foundation and are irreconcilable with USPS's own contemporaneous admissions that it could, and in fact did, successfully accommodate Groff without undue hardship.  Against that backdrop, claims of inconvenience or frustration to co-workers cannot establish undue hardship to *the business*.  At minimum, fact issues preclude summary judgment for USPS on its defense.

**ARGUMENT**

## I.    USPS failed to offer Groff a reasonable accommodation.

It is telling that USPS puts the cart before the horse in arguing first that its shift-swapping arrangement was a "reasonable accommodation" and only then bothering to define the meaning of that term.  When reasonable accommodation is properly defined to mean an arrangement that eliminates the conflict between work obligations and religious practice, it is self-evident that USPS's ad hoc shift-swapping plan fails as a matter of law.

### A.    Title VII's plain text requires that an accommodation eliminate the conflict between employment obligations and religious practice.

USPS begins its argument on a promising note, quoting Supreme Court precedent: "Title VII's objective is to '*eliminate the conflict* between employment requirements and religious practices,' but that an employer need not 'accommodate at all costs.'"  Appellee's Br. 33 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)) (emphasis added).  Groff could not agree more.  Title VII's accommodation mandate requires an employer to "eliminate the conflict" between the employee's work obligations and religious beliefs, but if doing so is too "costl[y]," then the employer may avail itself of the undue-hardship defense.  This approach gives independent meaning to the reasonable-accommodation requirement and the undue-hardship defense.  *See* Appellant's Br. 24.  By misreading Title VII

to countenance an accommodation that does not eliminate the religious conflict, USPS conflates the two clauses and interprets both incorrectly.

1.    USPS's central proposition is that Congress's use of the word "reasonably" connotes an intent to allow an accommodation that does not eliminate the religious conflict.  USPS accuses Groff of focusing "almost exclusively" on the term "accommodate" in lieu of the term "reasonably accommodate."  Appellee's Br. 34.  But Groff's position is simply that the Court must first understand the meaning of "accommodation" before it can understand the meaning of the modified term "reasonable accommodation."  That approach is consistent with Supreme Court precedent under both Title VII and the ADA.  In *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), for example, the Court "beg[a]n by examining the key statutory terms *in turn* before assessing their impact on the cases at hand and then confirming our work against this Court's precedents."  *Id*. at 1738–39 (emphasis added).

Similarly, in *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), the Court focused on the meaning of the word "accommodate" in the ADA, explaining that "accommodate" itself "conveys the need for effectiveness."  *Id.* at 400.  Thus, Congress did not need to call for "a 'complete,' 'total,' or 'perfect' accommodation" to convey that an accommodation must be effective in eliminating the conflict between religion and work duties.  Appellee's Br. 34–35.  After all, "[a]n *ineffective*

'modification' or 'adjustment' will not *accommodate*" anyone.  *Barnett*, 535 U.S. at 400.

USPS misleadingly quotes *Barnett* for the proposition that "'the word 'reasonable' does not mean 'effective.'"  Appellee's Br. 44 (quoting *Barnett*, 535 U.S. at 400).  But USPS omits the very next sentence.  "It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness."  *Barnett*, 535 U.S. at 400.  Thus, *Barnett* illustrates that the word "reasonable" does not dilute the baseline requirement that an accommodation be effective.  Rather, "reasonable" means that an employer may reasonably choose among an array of "accommodations"—*i.e.*, arrangements that effectively allow the employee to perform his work consistent with his religious beliefs.  Appellant's Br. 21–23.  The employer need not choose the employee's preferred accommodation, but whatever is offered must eliminate the conflict.  *Id*.; *Ansonia*, 479 U.S. at 68–70.  Groff's interpretation thus gives meaning to *both* terms.[1]

USPS urges that "[a]djectives modify nouns; adverbs modify verbs." Appellee's Br. 35.  But a modifier can only modify; it cannot alter the core meaning of the term it modifies.  A "reasonable accommodation" must still be an

---

[1] USPS fails to cite any ADA case upholding a "partial" accommodation—one that did not fully enable a disabled person to perform his job.  As EEOC regulations explain, a reasonable accommodation "enable[s] an individual . . . to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

"accommodation." *Cf. Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 368 (2018) ("According to the ordinary understanding of how adjectives work, 'critical habitat' must also be 'habitat.'"). "Adjectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Id.* In this case, "reasonable" identifies certain accommodations, but because all members of that subset remain accommodations, all "reasonable accommodations" must still be effective in eliminating the conflict between work and religion.

For these reasons, USPS's analogy to phrases like "reasonable doubt," "reasonable suspicion," and "reasonably prudent person" is inapposite. Appellee's Br. 36–37. Unlike the binary term "accommodate," these phrases are amenable to a sliding scale because the core terms themselves encompass a range of meanings. *See, e.g.*, *Doubt*, Oxford English Dictionary Online (2021) ("The (subjective) state of uncertainty with regard to the truth or reality of anything"); *Prudent*, Black's Law Dictionary (11th ed. 2019) ("Sensible and careful, esp. in trying to avoid unnecessary risks; circumspect or judicious in one's activities."); *Suspicion*, Black's Law Dictionary (11th ed. 2019) ("The apprehension or imagination of the existence of something wrong based only on inconclusive or slight evidence, or possibly even no evidence."). The core terms themselves embrace matters of degree and operate along a spectrum; the modifier "reasonable" instructs where along that continuum the phrase falls. By contrast, the term accommodate has a binary nature. Just as

"[t]here are no shades of gray when it comes to whether a package is delivered," Appellee's Br. 37 n.12, there are no shades of gray when it comes to whether an accommodation is effective. It either eliminates the conflict or it forces the employee to violate his religious beliefs.[2] Because an accommodation needs no modifier to require effectiveness, USPS's reliance on these three phrases fails.

2.    USPS expands on its erroneous reasoning by defining accommodation as "'something supplied for convenience or to satisfy a need' or 'an adaptation' or an 'adjustment.'" Appellee's Br. 38 (citation omitted). But Title VII gives religious practices "favored treatment," and "accommodate" thus means "allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2, 775 (2015). Because "Title VII requires otherwise-neutral policies to give way to the need for an accommodation," *id*. at 775, accommodate cannot mean merely to adapt or adjust in the abstract. The adaptation or adjustment must be effective, and an effective adaptation or adjustment operates as a reconciliation or elimination of the conflict. *See Ansonia*, 479 U.S. at 70 (a valid accommodation "*eliminates* the

---

[2] USPS claims that "a fact-specific, sliding scale inquiry" is needed because an accommodation may be effective for one set of religious beliefs but not another. Appellee's Br. 37 n.12. But this simply means that it is crucial to properly define the employee's religious beliefs so that the effectiveness of the accommodation can be analyzed. *See EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010).

conflict between employment requirements and religious practices by allowing the individual *to observe fully*" their religious precepts) (emphases added).

For similar reasons, USPS's comparison of reasonable accommodation to the Rehabilitation Act's use of "reasonable modification" is unconvincing. Appellee's Br. 39–40. Modification embraces matters of degree, and a modification may be reasonable even if it does not eliminate the obstacle faced by the person requesting the modification. But an accommodation is binary and requires effectiveness, so a reasonable accommodation must always eliminate the conflict faced by the person requesting the accommodation. There is no need to consult cases interpreting "reasonable modification" when *Abercrombie* and *Barnett* have interpreted "accommodation" to require an effective arrangement.

USPS's argument that Congress did not choose the words "wholly eliminate the conflict," Appellee's Br. 40, is therefore misguided. Congress had no reason to use the term "wholly accommodate" just as a baseball sportscaster has no reason to use the term "whole victory." An employer either accommodates the employee (thus eliminating the conflict) or forces the employee to violate his religious beliefs, and a baseball team either wins or loses. A "partial accommodation"—one that requires the employee to violate his conscience only some of the time—is as much a contradiction in terms as using "partial victory" to describe a football team that led most of the game but fell behind as time expired. The team and the employer may

8

have made reasonable efforts, but it is the outcome of these efforts that decides whether the team has won or whether the employer has accommodated the employee.  Title VII requires the employer to reasonably accommodate the employee's religious belief, not merely make reasonable efforts to accommodate.

3.    USPS's argument that the accommodation requested by Groff was "not an accommodation at all" is equally flawed.  Appellee's Br. 38.  USPS declares that being available to carry mail on Sundays is an "essential function" of being an RCA and thus Groff's requested accommodation "rewrites the job of an RCA."  *Id.*  It is telling that this argument contains neither a citation to the record nor a citation to authority to support either its factual or legal premises.  That is for good reason, as USPS did not complain that it was creating a new job for Groff when it exempted him from working on Sundays while at the Quarryville station, JA 35 ¶ 28, 728 ¶ 28, or at the Holtwood station for a time, JA 623, 628.  And USPS's view runs afoul of Title VII, for it would allow an employer to avoid accommodation simply by defining the job to exclude the requested accommodation.  In *Abercrombie*, for instance, the employer could not avoid making a religious accommodation by invoking its "Look Policy," which prohibited headwear as "too informal for

Abercrombie's desired image." 575 U.S. at 770. USPS's approach would put an end to Sabbath accommodations, among many others.[3]

4.  Lastly, USPS argues that in enacting Title VII, "Congress eschewed absolutes, recognizing that there is a need to balance an employer's business needs with an employee's religious beliefs." Appellee's Br. 41. Groff agrees that Title VII balances these competing needs, but the "employer's business needs" are considered as part of the undue-hardship defense. They do not justify misinterpreting "accommodation" to include ineffective arrangements. Groff's approach thus does not "require absolute acquiescence to the employee's wishes." Appellee's Br. 43. By interpreting "accommodate" to demand an effective resolution of the religious conflict and "reasonably" to give the employer discretion to select among effective resolutions, all with the backstop of the undue-hardship defense, Groff's approach balances the employee's religious needs with the exigencies of the employer's business. Appellant's Br. 22–23.

---

[3] The concept of "essential functions" is relevant only to ADA accommodations. *See* 42 U.S.C. § 12111(8) ("'[Q]ualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position[.]"). Neither Title VII nor its accommodations caselaw include this concept. To be sure, an employer could discuss the accommodation's effect on a job's central functions as part of its undue-hardship defense, and the relevant analysis would be whether the employer incurs an undue hardship on the conduct of its business.

It is USPS's approach that stacks the deck for the employer.  USPS openly admits that, under its view, the "employer's needs are considered both at the accommodation stage . . . and also at the hardship stage." Appellee's Br. 42.  Why would Congress include an undue-hardship defense if an employer could simply prevail on the accommodation prong by offering an "accommodation" that prioritizes its business needs over the employee's conscience rights?  By failing to give separate meanings to each term, USPS's approach violates canons of statutory construction and upsets the careful balance struck by Congress.

**B.      USPS's shift-swapping arrangement is not a reasonable accommodation because it did not eliminate the conflict between Sunday deliveries and Groff's religious beliefs.**

Once the correct standard for a reasonable accommodation is established, USPS's failure to meet that burden is apparent.  USPS contends that it offered Groff one reasonable accommodation: shift swapping.  Appellee's Br. 23.  But because these efforts to find volunteers to take Groff's shifts indisputably did not eliminate the conflict between Sunday deliveries and Groff's religious beliefs, USPS's shift-swapping program cannot constitute a reasonable accommodation.

1.      Ignoring the conflict-elimination standard, USPS divines from the caselaw a "general rule that shift swapping constitutes a reasonable accommodation." Appellee's Br. 26.  According to USPS, shift swapping generally constitutes a reasonable accommodation regardless whether it succeeds in

11

consistently finding substitutes for the employee.  Appellee's Br. 23–26.  This proposition defies common sense and finds no support in caselaw.  Rather, the cases reflect that shift swapping, like any accommodation, is acceptable only if it successfully eliminates the employee's religious conflict.

In *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), invoked by USPS on this point, shift swapping initially eliminated the conflict.  *Id*. at 67–68. That is why the Supreme Court "approved" shift swapping there.  Appellee's Br. 23. After the plaintiff transferred to a new department, however, shift swapping was impossible unless the employer violated the CBA's seniority provisions.  *Hardison,* 432 U.S. at 68.  The Court held that the employer was excused from arranging swaps because violating the CBA's seniority provisions would present an undue hardship. *Id.* at 76–81.  *Hardison* thus supports Groff's view: a shift-swapping program must eliminate the religious conflict, or the employer must show undue hardship.  *Id.*

Contrary to USPS's assertion, no court has upheld shift swapping as a reasonable accommodation where it did not resolve the religious conflict.  In *Miller v. Drennon*, 1992 WL 137578 (4th Cir. June 19, 1992), the court upheld a shift-swapping arrangement that "was dependent on the willingness of other employees to swap and subject to certain minimum staffing requirements" because the employer "also allowed [plaintiff] to apply for personal leave to avoid an objectionable assignment." *Id*. at *3.  Similarly, in *Beadle v. Hillsborough County*

*Sheriff's Department*, 29 F.3d 589 (11th Cir. 1994), the employer "further allowed [the employee] to request use of his sick days, vacation time and compensation time if he was unable to secure a swap." *Id*. at 591. The court held that the employee "failed to take full advantage of the accommodations offered to him" because he neither advertised his need for swaps during roll calls nor utilized the bulletin board. *Id*. Unlike in these cases, Groff had no other accommodations at his disposal if USPS could not find him a swap.

Similarly, in *Patterson v. Walgreen Co.*, 727 F. App'x 581 (11th Cir. 2018), the court concluded that the employee failed to take advantage of the accommodations offered, namely permitting him to find a swap and offering to move him to a new position. *Id*. at 586–87. The employee did not make an adequate effort to find a replacement, and the court rejected the employee's speculation that he might still face conflicts in the new position "because there were so many more employees with whom he could swap shifts" in case a scheduling conflict arose. *Id*. at 587. In other words, the employee failed to show that the proposed accommodation—a new position with shift swapping available—would not eliminate the conflict between work and religion. None of the cases cited by USPS cast doubt on the rule that a shift-swapping program must be effective to constitute

an accommodation.  USPS's shift-swapping arrangement proved utterly ineffective in practice despite Groff's full cooperation.[4]

2.    Lacking cases supporting its "general rule" that shift swapping is always a reasonable accommodation regardless of effectiveness, USPS unpersuasively attempts to distinguish cases cited by Groff where courts rejected shift-swapping arrangements that did not resolve the religious conflict.  For example, USPS claims that its shift-swapping program was not as "fruitless" as the one referenced in *Miller v. Port Authority of New York & New Jersey*, 351 F. Supp. 3d 762, 787 (D.N.J. 2018), *aff'd*, 788 F. App'x 886 (3d Cir. 2019), because "any carrier *could* cover for Groff."  Appellee's Br. 28–29 (emphasis added).  But it strains credulity to suggest that an accommodation that failed *in practice* over 20 times in two years and led to every available form of discipline was anything but fruitless. Similarly, USPS distinguishes *Cooper v. Oak Rubber Co.*, 15 F.3d 1375 (6th Cir. 1994), because the shift-swap accommodation there only allowed the Jewish Sabbatarian to avoid part of the Sabbath shift, while the USPS "created a system wherein Groff's entire Sunday shift *could be* swapped."    Appellee's Br. 29

---

[4] USPS claims that Groff was permitted to find his own replacements, Appellee's Br. 12, 22, and even fleetingly suggests that Groff should have done more to find coverage for his shifts, *id.* at 49 n.16.  However, in its written response to Groff's January 2018 request for an accommodation, USPS offered to find volunteers for Groff and neither obligated nor authorized Groff to seek out swaps.  JA 686. Postmaster Hess confirmed that Groff was not given permission to talk to RCAs in other offices to pursue a swap.  JA 621–22.

(emphasis added).  Surely this too is a distinction without a difference when USPS's system failed to achieve any accommodation *in reality* on so many occasions.

The Court should reject USPS's remarkable contention that Title VII is concerned with "what was actually offered," not "the empirical application of the accommodation."  Appellee's Brief 48–49.  As accommodate means "to bring into agreement or concord," *Accommodate*, Webster's Seventh New Collegiate Dictionary (1971), Title VII's text reflects that providing an accommodation is an ongoing process, not a singular moment at the outset of the effort to resolve the conflict.  Should that process prove ineffective, the harmonious resolution of the conflict, and thus the accommodation, ceases.  *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219 (6th Cir. 1991), illustrates this point.  While the accommodation offered there theoretically could have accommodated the employee's Sabbatarian beliefs, the court instead examined how the accommodation operated in practice and found it wanting.  *Id*. at 222.

A proposed accommodation that theoretically could eliminate the religious conflict is insufficient when there is no reason to believe that it will do so in practice, or where the factual record shows that the accommodation repeatedly fell short. Here, when the accommodation was offered, USPS knew there would be instances where a replacement could not be found, and yet USPS made little preparation for

that inevitability. JA 612. To bless such an ineffective arrangement would gut the duty to accommodate in all but the most extreme circumstances.[5]

3.    USPS next brushes away cases where the ineffective accommodation differed from USPS's shift-swapping arrangement. It mistakenly asserts that "[i]n *Crider,* the employer failed to offer shift swapping, instead simply scheduling the employee for fewer sabbath shifts." Appellee's Br. 27–28. But the employer did in fact swap shifts, voluntarily scheduling the other two employees for Sabbath shifts unless they were out of town or an emergency arose. *Crider v. Univ. of Tenn., Knoxville*, 492 F. App'x 609, 611–12 (6th Cir. 2012). And the substantive outcome here was precisely the same: Both Groff and the employee in *Crider* were offered nothing more than a reduction in the number of shifts that violated their religious beliefs. *Id.* at 612–13. Similarly, while the alleged accommodation in *Arlington Transit Mix* and the shift-swapping arrangement here were not procedurally identical, the substantive effect of both approaches was an "ad hoc arrangement contemplating that the inevitable collision between [the employee]'s religious beliefs and the [employer]'s new work schedule would be dealt with when it arose."

---

[5] Groff does not contend that "shift swapping must be perfect to be a reasonable accommodation." Appellee's Br. 28. While no employee should be disciplined or forced to violate his conscience when shift swapping fails in a particular instance, a shift-swapping arrangement that is both capable of, and successful in, consistently eliminating the religious conflict may be a reasonable accommodation despite the imperfections inherent in any human endeavor.

16

957 F.2d at 222.  Regardless of how it operates, "a week-to-week, wait-and-see posture . . . amount[s] to no accommodation at all." *Id.*

Because USPS's ad hoc shift-swapping arrangement fell far short of eliminating the conflict between Groff's work duties and his objections to working on the Sunday Sabbath, reversal on this point is required.

4.    USPS's    shift-swapping    arrangement    is    not    a    reasonable accommodation even under USPS's understanding of Title VII.  USPS concedes:

> Certainly if multiple reasonable accommodations are possible,
> and only one completely eliminates the conflict, the employer
> should choose that one.

Appellee's Br. 40 n.14.  Here, USPS itself had previously used an accommodation that eliminated the conflict: exempting Groff from Sunday deliveries.  As Hess explained in his July 31, 2018 email, automatically scheduling an extra RCA to cover Groff's Sunday route "satisfies his religious accommodation request for Sundays and no disciplinary action is needed." JA 684.[6]  Therefore, under USPS's reasoning, USPS was obligated to choose that accommodation.  USPS's concession that an employer must always choose an available option that eliminates the conflict is dispositive on the question of whether USPS offered a reasonable accommodation.

---

[6] USPS largely agrees that it did exempt Groff from Sunday deliveries at various times after Sunday deliveries began at the Holtwood station.  Appellee's Br. 14 n.2. It quibbles only over how this exemption came to be.  *Id.*  Regardless of whether USPS implemented it on purpose or accident, it is undisputed that this practice wholly satisfied Groff's need for a religious accommodation.  JA 684.

17

## II. USPS cannot demonstrate that accommodating Groff would cause undue hardship to its business.

In addition to advancing an erroneous interpretation of Title VII's accommodation requirement, USPS wrongly claims that accommodating Groff would cause it an undue hardship—even though it concededly provided Groff's desired accommodation without any undue hardship. USPS attempts to expand *Hardison*'s narrow holding regarding CBA seniority provisions and urges this Court to adopt a sweeping rule that would produce alarming consequences. Beyond the MOU, USPS cannot identify concrete proof that accommodating Groff would unduly burden the conduct of its business. Groff is entitled to summary judgment on USPS's undue-hardship defense, but at minimum USPS cannot avoid trial on the defense.

### A. USPS cannot rely on the MOU to establish undue hardship.

USPS claims that "[e]xcusing Groff from Sunday work would violate the MOU, a collectively bargained agreement," and that "[v]iolating a collectively bargained agreement is an undue hardship." Appellee's Br. 52. Both assertions are incorrect.

1. USPS misreads *Hardison* as "holding that an accommodation that requires the employer to violate a collectively bargained agreement is an undue hardship." Appellee's Br. 52. As Groff has explained, *Hardison* stands for the much narrower rule that an employer need not offer an accommodation where doing so

would violate *the seniority provisions* of a CBA. Appellant's Br. 38–44. USPS completely ignores *why* the Supreme Court allowed seniority provisions to trump Title VII's duty of accommodation: because Title VII's "special treatment" for seniority systems generally exempts such systems from Title VII's nondiscrimination provisions. *Hardison*, 432 U.S. at 81–82 (citing 42 U.S.C. § 2000e-2(h)). Title VII does not exempt other types of CBA provisions from Title VII's mandates. It follows that an employer may not rely on non-seniority provisions to automatically avoid its duty to accommodate a religious employee's needs.

USPS also ignores the Supreme Court's own characterization of *Hardison*, which confirms this limited holding: "This Court has held that, in the context of a Title VII religious discrimination case, an employer need not adapt to an employee's special worship schedule as a 'reasonable accommodation' *where doing so would conflict with the seniority rights of other employees*." *Barnett*, 535 U.S. at 403 (citing *Hardison*, 432 U.S. at 79–80) (emphasis added). And USPS overlooks the numerous courts of appeals who also describe the holding narrowly. Appellant's Br. 42 & n.4.[7]

---

[7] The EEOC likewise understands *Hardison*'s limited reach. *See* 29 C.F.R. § 1605.2(e)(2) ("Undue hardship would also be shown where a variance from a bona fide seniority system is necessary in order to accommodate an employee's religious practices when doing so would deny another employee his or her job or shift preference guaranteed by that system. *Hardison*, *supra*, 432 U.S. at 80.").

No court of appeals has excused an employer from the duty to accommodate based on a CBA's non-seniority provision. The cases cited by USPS, Appellee's Br. 54, all involved seniority provisions. *See Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 519 (6th Cir. 2002) ("[W]here any of Plaintiff's proposed accommodations had the ability of violating the collective bargaining agreement by interfering with the seniority system, Defendant was not required to accommodate Plaintiff."); *Mann v. Frank,* 7 F.3d 1365, 1369 (8th Cir. 1993) ("Compelling Higgins to work involuntarily in Mann's place would have contravened the seniority and ODL provisions of the collective bargaining agreement[.]").

The same was true in *Getz v. Pennsylvania Department of Public Welfare*, 802 F.2d 72 (3d Cir. 1986). There, the employee failed to even establish a *prima facie* case because she could have used her paid leave to observe all her religious holidays. *Id*. at 73–74. Moreover, because "the plaintiff's proposal would violate the provisions of the collective bargaining agreement relating to overtime *and seniority*," the Court did not address whether a non-seniority provision could override the duty to accommodate. *Id.* at 74 (emphasis added).[8]

This Court should not be the first to adopt a novel rule that would produce disturbing consequences. USPS's rule would allow employers and unions to

---

[8] USPS inexplicably claims that "there was no issue relating to seniority in the case." Appellee's Br. 54 n.17.

effectively foreclose religious accommodations any time a CBA does not expressly provide a mechanism for the requested accommodation. Appellant's Br. 43–44. Because it is undisputed that accommodating Groff would not violate seniority provisions in the MOU, JA 532–33 ¶¶ 45, 47–48,[9] *Hardison's* narrow rule does not apply, and the existence of the MOU cannot establish undue hardship.[10]

2.    Even if non-seniority provisions could support a showing of undue hardship, excusing Groff from Sunday deliveries would not violate the MOU. USPS repeatedly claims that the MOU recognized only three exceptions allowing an RCA to be skipped in the rotation. Appellee's Br. 10, 55. It is true that the MOU did not affirmatively provide a mechanism to excuse Groff from Sunday work, but it also did not preclude it. JA 676. Thus, while the MOU recognized three grounds to excuse an RCA from Sunday work, it did not declare these three grounds exclusive.

---

[9] USPS argues for the first time on appeal that the MOU "can be seen as a form of a seniority agreement" because it supposedly aimed to ensure that *regular carriers* would not have to cover Sunday shifts. Appellee's Br. 56. But USPS never considered *that* option as an accommodation, and regular carriers are not governed by the MOU. JA 675–77. The only question is whether scheduling another RCA—all of whom lack seniority rights under the MOU—in place of Groff would cause USPS an undue hardship.

[10] USPS misfires in noting that "[i]f Postmaster Hess himself delivered the packages, he also would have violated a collectively bargained agreement applicable to regular carriers." Appellee's Br. 56–57. Had an extra RCA been scheduled in place of Groff, there would have been no need for Hess to deliver packages. Hess's choice to deliver packages resulted from failing to accommodate Groff, not from providing him an accommodation.

This understanding accords with Hess's contemporaneous admission that providing Groff an exemption from Sunday deliveries did not pose an undue hardship to the conduct of USPS's business, while hardship arose only when USPS scheduled Groff knowing he would not report to work.  JA 684.

There is no reason to read the MOU to foreclose an accommodation that would otherwise be required by federal law.  The inconclusive settlement of the grievance referenced by USPS, Appellee's Br. 15, 63, merely recognized that any accommodation must be consistent with the MOU and may not infringe on any other employees' contractual rights or benefits.  JA 516–17.  It did not conclude that exempting Groff from Sunday deliveries would violate the MOU.  Indeed, Groff and USPS agree that RCAs have no contractual right to specific days off; Sunday deliveries were assigned without regard to seniority; and no RCA had a superior right to have Sunday off than any other RCA.  JA 532–33 ¶¶ 45, 47–48.

Lastly, USPS must accept that "a union cannot lawfully bargain for the establishment or continuation of discriminatory practices."  Appellant's Br. 43 (citation omitted).  Accordingly, USPS and the Union could not have bargained away Groff's right to an accommodation simply by failing to provide explicitly for one in the MOU.

### B.    USPS fails to offer proof of any other hardships.

USPS erroneously contends that it showed four other hardships.

1.    USPS claims that skipping Groff on Sundays would result in "fewer days off for the other RCAs." Appellee's Br. 57.  But an employer does not establish undue hardship by pointing to a more-than-*de-minimis* impact on a co-worker. *Crider*, 492 F. App'x at 614.  "Title VII does not exempt accommodation which creates undue hardship on the *employees;* it requires reasonable accommodation 'without undue hardship on the conduct of *the employer's business.*'" *Id.* (citation omitted).

USPS, moreover, is flatly incorrect that Congress ruled out accommodations that would "discriminate against" another employee in this general sense. Appellee's Br. 57–58.  Title VII commands employers to give "favored treatment" to employees' religious practices and allow them to engage in these practices "despite the employer's normal rules to the contrary." *Abercrombie*, 575 U.S. at 772 n.2, 775.  "Certainly, every religious accommodation will inevitably cause some differences in treatment among employees, and differential treatment alone is not enough to create an undue hardship." *Harrell v. Donahue*, 638 F.3d 975, 980 (8th Cir. 2011).  USPS's cases, Appellee's Br. 57, all predate *Abercrombie* and conflict with its guidance.  In any event, USPS overstates the alleged hardship.  At most, the alleged hardship faced by the Holtwood station existed for just a few weeks during the peak season, JA 532 ¶ 42, and during non-peak season, RCAs were drawn from all of Lancaster County, *id*. ¶ 43.

2.    USPS next claims that "when Groff did not work on Sundays it caused overtime at the Holtwood station," citing Hess's barebones testimony referencing Holtwood's peak season. Appellee's Br. 59. USPS's corporate representative Gless, however, conceded that USPS would *not* suffer a negative impact if an extra RCA were scheduled in advance to take Groff's place, JA 650–61, and Hess's email acknowledged the same, JA 684.[11]

USPS asserts that even paying overtime "only at Holtwood during peak season" would be sufficient to show an undue hardship. Appellee's Br. 59. But USPS cites cases in which courts observed that an accommodation requiring the employer to *regularly* pay premium wages could constitute an undue hardship. Appellee's Br. 58–59; *see, e.g.*, *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 133 (3d Cir. 1986) (discussing how employee's proposed accommodation of working only four days per week in *Hardison* would result in regular payment of overtime wages to replacement employees). EEOC regulations, by contrast, "presume that the infrequent payment of premium wages for a substitute . . . are costs

---

[11] USPS discounts the significance of Hess's July 31, 2018 email, claiming that he "is not a lawyer and cannot draw legal conclusions." Appellee's Br. 15 n.2. But as Postmaster, he is certainly qualified to opine on how an accommodation affects the business of delivering mail. USPS "contextualization" of the email makes little sense. Hess did clarify the proper procedures for arranging shift swaps, but he also clarified the need to schedule Groff so that USPS could later claim undue hardship when he did not show up to work. JA 684. Thus, Hess revealed his contemporaneous view that exempting Groff from Sunday deliveries would not impose an undue hardship.

which an employer can be required to bear as a means of providing a reasonable accommodation." 29 C.F.R. § 1605.2(e)(1). Such infrequent costs are the epitome of *de minimis*, fringe expenses that do not constitute an undue hardship. That result is especially appropriate given that USPS has not presented a single document indicating that it ever paid overtime wages due to accommodating Groff. Indeed, Gless admitted that she had no idea whether overtime costs were incurred. JA 648–49. USPS argues that it must "only articulate a future hardship" from overtime costs, Appellee's Br. 59, but when USPS claims it *actually incurred* those costs, the absence of any evidence on this score is compelling. At minimum, USPS's failure to identify any concrete evidence of meaningful, recurring overtime costs, combined with its own witnesses' admissions, creates a fact issue suitable for trial.

3.   USPS also asserts that skipping Groff on Sundays would have led to more dangerous conditions for other carriers working that day. Appellee's Br. 60. But USPS concedes that this alleged danger arose only "*[w]hen Groff was absent and there was no coverage*" because "the carrier who reported to work had to work longer to get the packages delivered." *Id.* (emphasis added). In other words, the alleged danger stemmed from *failing* to accommodate Groff—scheduling him knowing that routes would be short-staffed if a swap was not found. If USPS had scheduled an RCA in Groff's place on Sundays, the routes would be fully staffed. That is precisely what USPS did when it accommodated Groff for a time without

undue hardship (danger concerns or otherwise). Thus, any increased risk of harm to USPS's carriers cannot be charged to Groff's requested accommodation. *See Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 522 (6th Cir. 1975) (rejecting undue-hardship defense where "days of this dangerous length were not the unavoidable by-product of any accommodation").

Moreover, as with overtime costs, USPS has not presented any evidence that safety issues actually arose on Sundays that Groff did not work, and Gless admitted that she did not know whether other employees ever encountered safety problems. JA 648–49. While USPS speculates about "increased odds of injury," the concrete evidence does not bear out the type of "genuine" safety or security risk that may constitute an undue burden. *Geo Grp.*, 616 F.3d at 273.

4.    Lastly, USPS proffers that skipping Groff on Sundays degraded morale to a degree that harmed USPS's operations. Appellee's Br. 61–63. While USPS details hearsay regarding employee morale, it presents not a shred of evidence that its operations were disrupted or their efficiency diminished. USPS's reliance on *Protos* is puzzling. *Id*. at 61. Contrary to USPS's description, this Court *affirmed* the district court's bench-trial finding that "accommodation of the request would not cause the company undue hardship," even though the employer's witnesses "testified that the line operated with diminished efficiency in Protos's absence." *Protos*, 797 F.2d at 131, 135. Given the absence of any such testimony from USPS,

it certainly cannot win on summary judgment. If a "threatened" boycott and the filing of a single grievance are sufficient to show undue hardship without proof of *operational* harm, religious accommodation may readily be overridden by a heckler's veto.

USPS's only concrete operational evidence involves the Holtwood station, where one RCA transferred after covering for Groff during peak season. Appellee's Br. 62. But USPS never identifies any hardship to USPS's business from this transfer, noting only that Hess had to hire a replacement. *Id.* And while USPS declares it "irrelevant" that peak season "lasted only a few weeks," the alleged "impact on the station's staffing" would *only* occur during that brief peak season. *Id.*; JA 532 ¶ 43 (explaining that during non-peak season, RCAs were drawn from all Lancaster County stations).[12] At bottom, all USPS can muster is the *ipse dixit*—unsupported by citation—that "[s]kipping Groff created a level of dissent that impacted USPS management's ability to properly fulfill its mission," and "[t]he impact on morale here had a tangible, detrimental impact on the USPS's operations." Appellee's Br. 63. Especially given Hess's concession that USPS successfully accommodated Groff without operational hardship, USPS's alleged morale problems and Holtwood-peak-season evidence at most create a fact question for trial.

---

[12] USPS misstates that a Holtwood RCA quit because of Groff, leaving the station short-staffed. Appellee's Br. 62. The Holtwood RCA who quit did not do so because of Groff. JA 617.

## CONCLUSION

The district court misread Title VII, misapplied Supreme Court precedent, and overlooked dispositive admissions.  Its judgment must be reversed.

Dated:  September 17, 2021

Respectfully submitted,

  /s/ Hiram S. Sasser, III
Kelly J. Shackelford
Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Stephanie N. Taub
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, TX 75075
Tel: (972) 941-4444


  /s/ Randall Luke Wenger
Randall Luke Wenger
Jeremy L. Samek
INDEPENDENCE LAW CENTER
23 North Front Street
Harrisburg, PA 17101
Tel: (717) 657-4990

  /s/ Aaron M. Streett
Aaron M. Streett
Christopher E. Tutunjian
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
Tel: (713) 229-1234

  /s/ David W. Crossett
David W. Crossett
CORNERSTONE LAW FIRM, LLC
8500 Allentown Pike, Suite 3
Blandon, PA 19510
Tel: (610) 926-7875

  /s/ Alan J. Reinach
Alan J. Reinach
CHURCH STATE COUNCIL
2686 Townsgate Road
Westlake Village, CA 91361
Tel: (805) 413-7398


*Attorneys for Plaintiff-Appellant*
*Gerald E. Groff*

## COMBINED CERTIFICATIONS

I, the undersigned, hereby certify the following:

1.      That I am a member of the Bar or the United States Court of Appeals for the Third Circuit.

2.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,469 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

4.      That the text of the electronic and paper versions of the foregoing brief are identical.

5.      That a virus check was performed on this brief using Microsoft Defender Antivirus Version 4.18.2108.7, and that no virus was indicated.

6.      That, on September 17, 2021, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Dated:  September 17, 2021                    _/s/ Christopher E. Tutunjian_
                                              Christopher E. Tutunjian